## THOMAS B. HALL *vs.* WILLIAM WHISTON.

A levy of an execution by a judgment creditor upon the real estate of an insolvent debtor, made after the first publication of notice of the issuing of the warrant, is not valid against the title of the assignee, although the assignee has not recorded the assignment ·in the county where the land lies, and although the creditor has no actual notice of the insolvency.

If a judgment creditor of an insolvent debtor has levied his execution upon the debtor's reversion of real estate, after the first publication of notice of the issuing of the warrant, the assignee in insolvency may maintain a bill in equity to set aside the levy.

BILL IN EQUITY by the assignee of Levi Simmons, an insolvent debtor, seeking to set aside a levy of an execution upon the debtor's reversion of land in Duxbury.   At the hearing in this court, before *Merrick,* J., upon facts which, so far as material, are stated in the opinion, the bill was dismissed, and the case reported for the determination of the whole court.

*E. Ames,* for the plaintiff, cited *St.* 1838, *c.* 163, § 2; *Godfrey* v. *Turnbull,* 1 Esp. R. 371; *Clarke* v. *Minot,* 4 Met. 351; Gen. Sts. *c.* 118, § 16; *Frazer* v. *Western,* 1 Barb. Ch. 220; *Hildreth* v. *Sands,* 2 Johns. Ch. 35, 50; S. C. 14 Johns. 493.

*A. A. Ranney,* for the defendant.   The case depends, so far as the validity of the title is concerned, upon legal questions, and does not come within the equity jurisdiction of this court. *Cushing* v. *Arnold,* 9 Met. 23.   *Thayer* v. *Smith,* Ib. 469.   *Adams* v. *Porter,* 1 Cush. 170.   *Woodman* v. *Saltonstall,* 7 Cush. 181. The plaintiff has no title which ought to be enforced against

this defendant. He had the means of knowledge of the insolvent's interest in the land, from the public records. He did not comply with the statute, requiring the assignment to be recorded, until after the lapse of twelve years. *St.* 1858, *c.* 163, § 11. The defendant had no means of ascertaining the plaintiff's title, without searching through all the probate offices and all the newspapers in the Commonwealth. The publications made were not constructive notice to strangers, having no interest in the proceedings. Even if the assignment would pass the title, without being recorded, the assignee might renounce or abandon his title, it being of doubtful value. 1 Deacon on Bankruptcy, 340, *& notes.* It must be presumed that he thus did. *Farnsworth* v. *Childs,* 4 Mass. 637.

HOAR, J. The report of the justice of this court before whom this cause was heard shows that the plaintiff is the assignee in insolvency of one Levi Simmons, who petitioned for the benefit of the insolvent laws in the county of Suffolk, April 29, 1850. The first publication was made on the 2d day of May 1850. The assignment to the plaintiff was made on the 24th of May 1850, and recorded in Plymouth county, March 13, 1862. Simmons, at the time of the commencement of the proceedings in insolvency, was the owner of a reversionary interest in real estate in the county of Plymouth ; but he did not include it in his schedule of property ; and the plaintiff had no knowledge of the fact until the time when he caused the assignment to be recorded as above stated. The defendant became a creditor of Simmons in 1859, and in 1860 recovered judgment against him, sued out execution, and levied upon the reversion aforesaid. The defendant denies in his answer that he had any actual knowledge or notice of the previous insolvency of Simmons, and claims that his levy is good against the unrecorded assignment to the plaintiff.

Upon these facts it is evident that the right of the defendant depends upon the decision of the question whether the insolvent Simmons had any title to the land upon which the levy could operate. In other words, was the assignment to the plaintiff effectual against the defendant before it was recorded ? or did

the failure to record it "forthwith" affect its validity as a conveyance of Simmons's estate in the premises?

The insolvent law, *St.* 1838, *c.* 163, § 5, provides that "the said judge shall, by an instrument under his hand and seal, assign and convey to the person or persons chosen or appointed assignees as aforesaid, all the estate, real and personal, of the debtor, excepting such as may be by law exempted from attachment, with all his deeds, books and papers relating thereto; which assignment shall vest in the assignees all the property of the debtor, both real and personal, which he could by any way or means have lawfully sold, assigned or conveyed, or which might have been taken in execution on any judgment against him, at the time of the first publication of the notice of issuing the warrant," &c., "and such assignment shall be effectual to pass all the said estate," &c. Section 11 requires that "the assignees shall forthwith cause the said assignment to be recorded in the registry of deeds in each county in the Commonwealth in which there may be any real estate of the debtor, on which the same may operate."

It is evident from the provisions in § 5, that it was not intended that the registry of deeds should afford the means of complete protection to purchasers and creditors by giving them seasonable notice of the change of title occasioned by the proceedings in insolvency. Some time must necessarily elapse between the issuing of the warrant, and the meeting at which the assignee is chosen. Yet, when the assignment is made, it operates to vest in the assignee all the real estate of the debtor which he owned at the date of the first publication of notice of the issuing of the warrant. If, in this interval, a purchaser has taken a conveyance from the debtor, or a creditor has levied upon the estate, in good faith, and without any actual notice of the insolvency, he acquires no title, because the estate has passed from the debtor by operation of law. The publication of notice is intended by the statute to give constructive notice to all the world of the change in the debtor's rights and title, *Clarke* v. *Minot*, 4 Met. 351. Although the general policy of the law is to furnish through the registry of deeds the means of

ascertaining titles to real estate, it is not furnished completely in all cases. There are many acts *in pais*, which are not shown by the registry, which may seriously affect the right or power of a creditor to acquire a title to the property of his debtor. Such are death, marriage, the performance of the condition of a mortgage, terminating the estate of the mortgagee without any discharge or reconveyance, the happening of an event upon which an estate is limited, and the like. Still more analogous to the case we are considering is the effect of the *lis pendens*, as notice to all persons concerned of the assertion and prosecution of adverse rights.

The provision that the estate of the debtor shall pass to the assignee is in terms absolute, and without qualification. The direction to the assignee to have the deed recorded forthwith in every county in which there is real estate of the debtor is indeed express, but it is accompanied by no language indicating that the title is to be made dependent upon his performance of the duty. It is found in a long section containing many other directions as to the course of his official proceedings. These are all matters to be done by him after the estate has vested under the assignment. We think they must be regarded as directory merely, and not as coming within that class of cases where a statute title is made, by express enactment or implied intention of the law, to depend upon the exact fulfilment of all which the statute enjoins. The assignee takes not for himself, but for creditors. He is an officer of the law, but not under the direct control of those whose interests he represents. If he sends the deed of assignment for record to one registry, and then to others in succession, some time must necessarily elapse before it can be recorded in all. The direction to cause it to be recorded should either make it obligatory to record it in all the registry districts of the Commonwealth, or else there would seem to be no duty incumbent upon him, in this respect, until he knows or has reasonable cause to believe that there is real estate which has vested in him by the assignment.

The defendant relies upon the lapse of time which occurred before the assignee did any act to assert his title as an equitable

bar to the suit. But the plaintiff was guilty of no laches, be-cause he had no knowledge or intimation that any such estate belonged to the insolvent.

The evidence of the second insolvency of Simmons, in 1857, was rightly excluded, because no property passed to the second assignee which belonged to the debtor at the time of the first publication in the former proceedings. This would not be so, if the title of the assignee depended upon the record in the regis-try. The same reason which in that case would have made the title of the second assignee good against the first, would have made his title good against the defendant, who had actual no-tice of the second assignment. Then, if the first assignment were actually recorded before the second, or if the second as-signee had actual notice of the prior insolvency, the title of the first assignee would prevail against him, as his title would pre-vail against the levy of a creditor with notice of it.

The remaining objection is to the equitable jurisdiction of the court, on the ground that the plaintiff has an adequate and complete remedy at law. *Woodman v. Saltonstall*, 7 Cush. 181. The answer to this objection is, that, the estate of the insolvent being a reversion, no action at law can be brought to try the title. The levy of the defendant is a cloud upon the title which might seriously impair the value of the estate which it is the plaintiff's duty to sell, and he is entitled to the aid of this court to remove 't. Gen. Sts. *c.* 118, § 16.

<div align="center">

*Decree according to the prayer of the bill, with costs.*